Filed 3/25/21  P. v. Pina CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DANIEL MICHAEL PINA,<br><br>    Defendant and Appellant. | 2d Crim. No. B300473<br>(Super. Ct. No. 2017019124)<br>(Ventura County) |

Daniel Michael Pina appeals the judgment entered after he pleaded guilty to conspiracy to bring controlled substances into a custodial facility and sell heroin and methamphetamine (Pen. Code,[1] §§ 182, subd. (a)(1), 4573, Health & Saf. Code, §§ 11352, subd. (a), 11379, subd. (a)), and criminal street gang conspiracy to sell heroin (§ 182.5, Health & Saf. Code, § 11352, subd. (a)). Appellant also admitted suffering two prior strike convictions (§§ 667, 1170.12).  The trial court sentenced him to five years in state

---

[1] All statutory references are to the Penal Code unless otherwise stated.

prison, to be served consecutively to the two sentences of life without the possibility of parole he was already serving for first degree murder. Appellant contends the court erred in denying his motion to suppress the evidence obtained through wiretaps of the cellphones of his coconspirators. He also asks us to independently review the sealed affidavits offered in support of the orders authorizing the wiretaps, as contemplated in *People v. Hobbs* (1994) 7 Cal.4th 948 (*Hobbs*). We affirm.[2]

## FACTS AND PROCEDURAL HISTORY

Appellant is a member of the Mexican Mafia. In 1980, he was convicted on two counts of murder and was sentenced to life without the possibility of parole. In August 2016, appellant was transferred from state prison to the Ventura County Pre-Trial Detention Facility (PTDF). The purpose of the transfer was to

---

[2] In his opening brief, appellant also contends that section 629.52, subdivision (a)(3) of California's Wiretap Act (§ 629.50 et seq.) is unconstitutionally overbroad. In his reply brief, he states that "[i]f, after conducting an independent review of the unredacted affidavit attached to Wiretap Warrants 2017-04 and 2017-04c, the Court finds that there was probable cause to issue the warrant for any of the three crimes that [were] listed in Title III [of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C.S. §§ 2510-2520], then [appellant] concedes that he does not having standing to make the over breadth [*sic*] challenge." (See, e.g., *Bailey v. City of National City* (1991) 226 Cal.App.3d 1319, 1330, citations omitted [recognizing that "a person to whose conduct a law clearly applies" lacks standing to assert that the law is "vague or unconstitutionally overbroad when applied to the conduct of others"].) Because we find that the referenced wiretap orders were supported by a showing of probable cause as to the three crimes that were listed in title III (see *post*, p. 14), we accept appellant's concession that he lacks standing to raise his overbreadth claim.

investigate appellant's participation in a conspiracy to traffic heroin, methamphetamine, and cocaine throughout Southern California and parts of the western United States.

All of appellant's phone calls at the PTDF were recorded. On March 16, 2017, the Ventura County Sheriff's Department applied for an order to intercept wire and electronic communications to and from a total of six cellphones belonging to Tina Debenedetto, Cathy Castro, and "Star." The application was signed by Chief Assistant District Attorney Janice L. Maurizi, who was identified as "the District Attorney's designee to act as District Attorney in his absence." From March 15 through March 19, (now former) District Attorney Gregory D. Totten was in New Orleans for a National District Attorney's Association board meeting.

Deputy Sheriff Jeremy Bramlette submitted an affidavit in support of the application. Deputy Bramlette asserted among other things that there was probable cause to believe appellant and his coconspirators had committed and were continuing to commit the crimes of conspiracy (§ 182), extortion (§ 518), witness intimidation (§ 136), and possession for sale, transportation, and sale of controlled substances containing heroin and/or methamphetamine (Health & Saf. Code, §§ 11351, 11352, 11378, 11379), where the substance exceeds three pounds of solid substance by weight (§ 629.52, subd. (a)). Deputy Bramlette also stated his belief that these crimes were "being committed for the benefit of, at the direction of, or in association with a criminal street gang in violation of Penal Code section 186.22 . . . ."

In his affidavit, Deputy Bramlette also requested that "the wire and electronic telephone communication intercepts shall take place in a facility belonging to the Ventura County Sheriff's Office. This is a secure facility located in the city of Camarillo,

3

State of California.  I also request the San Bernardino Sheriff's officer be authorized to act as our agent in contacting telephone service providers and acting as a conduit for data and audio in the execution of the court order."

On March 17, 2017, the trial court issued wiretap order number 2017-04 authorizing wiretaps of the six cellphones referenced in the application.  The court's order also stated that "[p]ursuant to . . . [S]ection 629.4, the Court copy of the recordings of any communications intercepted pursuant to this order shall be sealed on a daily basis and presented to this Court upon expiration of this Order, or any extension thereafter."  On March 21 (wiretap order number 2017-04a), March 22 (wiretap order number 2017-04b), and April 11 (wiretap order number 2017-04c), the court issued additional orders on applications signed by District Attorney Totten.  All three subsequent orders included the directive regarding daily sealing.

The monitoring of calls under the wiretap orders was conducted in Camarillo at the secure facility referred to in Deputy Bramlette's affidavit.  Because the Ventura County Sheriff's Department did not have an internet connection with the cellphone carriers for the phones identified in the wiretap orders, it coordinated with the San Bernardino Sheriff's Department, which had such a connection.  Whenever a targeted call was intercepted, the phone company routed the information to the San Bernardino Sheriff's Department, which used a building with servers to route the call to the Camarillo facility for monitoring by Ventura County Sheriff's deputies.  No listening or recording of the calls took place in San Bernardino.

All intercepted data received at the Camarillo facility was contemporaneously stored in a computer system.  The wiretaps concluded on the afternoon of April 17, 2017.  Due to the large

4

amount of data, the process of copying the recorded data onto discs was not completed until the morning of April 19. The trial judge, who was in trial on April 19, scheduled the sealing for 4:30 p.m. the following day. On April 20, copies of all the intercepted communications were submitted to the court on discs and the court ordered them sealed.

On November 22, 2017, appellant was charged in case number 2017019124 with conspiracy to bring controlled substances into a custodial facility and sell heroin and methamphetamine, possession of heroin for sale, and possession of methamphetamine for sale. In May 2018, the prosecution moved to consolidate the case with case number 2016044783, in which appellant was also charged with conspiring to traffic and sell drugs from prison. The prior case involved several wiretaps that began in April 2016. The court granted the motion and in December 2018, the prosecutor filed a consolidated amended felony information charging appellant in 14 counts.

In January 2019, appellant moved to suppress evidence obtained from eleven of the wiretap orders issued in 2016 and requested a hearing under *Franks v. Delaware* (1978) 438 U.S. 154, 171 [57 L.Ed.2d 667]). The trial court denied the motion except for one issue, which the court reserved ruling on until the prosecution presented more evidence.

In April 2019, the prosecution dismissed all of the counts relating to the 2016 wiretap orders in the interests of justice. The prosecution subsequently filed as second amended felony information charging appellant with one count of conspiracy to commit a crime, i.e., bring controlled substances into a custodial facility  and sell heroin and methamphetamine.

Appellant moved under section 629.72 and 1538.5 to suppress the evidence obtained pursuant to the 2017 wiretap

5

orders. The prosecution opposed the motion, which was denied. The prosecution subsequently filed a third amended information adding a count for criminal street gang conspiracy to sell heroin. That same day, appellant pleaded guilty to both counts pursuant to a plea bargain.

## DISCUSSION

### I.

### *Motion to Suppress*

Appellant contends the trial court erred in denying his motion to suppress the evidence obtained from the 2017 wiretap orders. We disagree.

"'In general, California law prohibits wiretapping,'" with certain statutory exceptions. (*People v. Leon* (2007) 40 Cal.4th 376, 383.) *People v. Sedillo* (2015) 235 Cal.App.4th 1037, 1053 (*Sedillo*).) Those exceptions, as set forth in California's Wiretap Act (§ 629.50 et seq.), allow judicial authorization of a wiretap upon the determination of probable cause to believe that: (1) "an individual has committed, is committing, or is about to commit one or more" of several enumerated offenses (*Leon,* at p. 384), including murder, attempted murder, conspiracy to commit murder, or "[a] felony violation of Section 186.22" (§ 629.52, subd. (a)(2), (3), (6)); (2) "communications concerning the illegal activities will be obtained through" the wiretap (§ 629.52, subd. (b)); and (3) "the communications device will be used by the person whose communications are to be intercepted (§ 629.52, subd. (c))." (*Leon*, at p. 384; *People v. Camel* (2017) 8 Cal.App.5th 989, 1001.)

Section 629.72 permits a defendant to move to suppress some or all of the contents of any intercepted communication or evidence derived from it, but "only on the basis that the contents or evidence were obtained in violation of the Fourth Amendment

6

of the United States Constitution or of this chapter." Because federal law (through title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C.S. §§ 2510-2520) establishes the minimum standards for the admissibility of evidence procured through electronic surveillance, we look to both federal and California law in applying the California wiretap statute. (*People v. Otto* (1992) 2 Cal.4th 1088, 1092.)

"The United States Supreme Court has never '[gone] so far as to suggest that every failure to comply fully with any requirement provided in Title III would render . . . interception of wire or oral communications "unlawful."' Rather, the high court has held exclusion of wiretap evidence is required under Title III only when 'there is [a] failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device.' In other words, the statutory exclusion remedy only applies to those provisions which 'play a central role in the statutory scheme.'" (*People v. Jackson* (2005) 129 Cal.App.4th 129, 149 (*Jackson*).) Accordingly, "the proper analysis [for] a motion to suppress wiretap evidence must ask and answer the following questions. (1) Has the defendant established a violation of a provision of the wiretap law? If not, the motion is denied. (2) If a wiretap violation has been established was the provision violated one which 'was intended to play a central role in the statutory scheme[?]' If the provision was not intended to 'play a central role,' failing to comply with it will not render interceptions under the wiretap order unlawful and the motion is denied. (3) If the provision violated was central to the legislative scheme was the purpose of the provision achieved in spite of the error? If the purpose was achieved, the

7

motion is denied.  If the purpose was not achieved, the motion is granted."  (*Ibid.*, internal footnotes omitted.)

In reviewing the trial court's ruling on the motion to suppress and its determination that the documentation supporting the wiretap authorization application satisfied the statutory requirements, "we defer to the court's express or implied factual findings if they are supported by substantial evidence.  We exercise our independent judgment to determine whether, on the facts found, a search conducted by wiretap was 'reasonable' under the Fourth Amendment and whether the wiretap was authorized and conducted in conformity with the federal and state statutes regulating such a search."  (*Jackson*, *supra*, 129 Cal.App.4th at p. 146.)

### a. District Attorney's Designee (§ 629.50, subd. (a))

Section 629.50, subdivision (a) provides that wiretap applications "be made in writing upon the personal oath or affirmation . . . of a district attorney, or the person designated to act as district attorney in the district attorney's absence."  Appellant contends the trial court erred in finding that the application for wiretap order number 2017-04 was properly signed by Chief Assistant District Attorney Maurizi.  We are not persuaded.

The application, which was signed on March 16, 2017, states that Maurizi was "the District Attorney's designee to act as District Attorney in his absence."  Moreover, it is undisputed that former District Attorney Totten was in New Orleans from March 15 to March 19.  Accordingly, Maurizi's application was proper.

Appellant offers no authority for his claim that Totten was prohibited from delegating his authority to Maurizi, whom appellant characterizes as "an unelected underling."  We also reject his assertion that the application failed to sufficiently state

whether Maurizi was authorized to act as district attorney "for all purposes." The application made clear that Maurizi was authorized "to act as District Attorney in [Totten's] absence." *United States v. Perez-Valencia* (9th Cir. 2013) 727 F.3d 852, in which the applicant stated that he was merely "'designated to act in [the district attorney's] absence *pursuant to Penal Code 629.50*'" (*id.* at p. 854, italics added), is inapposite. Notwithstanding appellant's claim, it is also clear that Totten was unavailable to sign the application even though the application did not expressly state he was "absent." The trial court thus did not err in finding that the application complied with section 629.50, subdivision (a).

### b. Jurisdiction (§ 659.52)

Section 659.52 states in pertinent part that "[u]pon application made under Section 629.50, the judge may enter an ex parte order . . . authorizing interception of wire or electronic communications initially intercepted within the territorial jurisdiction of the court in which the judge is sitting . . . ." Appellant contends, as he did below, that the judge who issued the wiretap orders in this case lacked jurisdiction to do so because (1) there was no showing that the target phones were physically located in Ventura County; and (2) the calls were initially intercepted in San Bernardino County. We are not persuaded.

California's Wiretap Act was enacted "'to expand California wiretap law to conform to the federal law.' [Citation.]" (*People v. Leon*, *supra*, 40 Cal.4th at p. 383.) Accordingly, case law on the federal counterpart to section 659.52 (18 U.S.C.S.

9

§ 2518(3))[3] is instructive.  As that authority makes clear, "an interception occurs where the tapped phone is located *and* where law enforcement officers first overhear the call."  (*United States v. Luong* (9th Cir. 2006) 471 F.3d 1107, 1109; see also *United States v. Rodriguez* (2d Cir. 1992) 968 F.2d 130, 136 [recognizing "[i]t seems clear that when the contents of a . . . communication are captured or redirected in any way, an interception occurs at that time" but also that "since the definition of interception includes the 'aural' acquisition of the contents of the communication, the interception must also be considered to occur at the place where the redirected contents are first heard"].)  Here, it is undisputed that the calls were first heard in Ventura County.  Accordingly appellant's jurisdictional claim fails.[4]

---

[3] The statute provides in relevant part that "the judge may enter an ex parte order . . . authorizing or approving interception of wire, oral, or electronic communications within the territorial jurisdiction of the court in which the judge is sitting (and outside that jurisdiction but within the United States in the case of a mobile interception device authorized by a Federal court within such jurisdiction)."  (18 U.S.C.S. § 2518(3).).  "'[I]ntercept'" is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device."  (*Id.*, § 2510(4).)

[4] For the first time in his reply brief, appellant asserts that "[t]he federal wiretap act only establishes the minimum standards for the admissibility of evidence procured through electronic surveillance.  It does not preclude a State from requiring more than Title III."  (Citations omitted.)  He fails to recognize, however, that California's Wiretap Act was enacted "'to conform to the federal law.' [Citation.]" (*People v. Leon, supra,* 40 Cal.4th at p. 383.)

### c. Sealing (§ 629.64)

Section 629.64 states in pertinent part that "[i]mmediately upon the expiration of the period of the [wiretap] order . . . , the recordings shall be made available to the judge issuing the order and sealed under his or her directions." The corresponding federal statute (18 U.S.C.S. § 2518(8)(a)) is virtually identical. If the recordings are not "immediately" made available to the judge, the government must "provide a 'satisfactory explanation' for the delay in obtaining a seal. [Citation.]" (*United States v. McGuire* (9th Cir. 2002) 307 F.3d 1192, 1203.) "[I]mmediately sealing the tapes means 'within one or two days' and 'any delay beyond that certainly calls for explanation.' [Citations.]" (*United States v. Pedroni* (9th Cir. 1992) 958 F.2d 262, 265.)

Appellant contends as he did below that the recordings were not properly sealed. Although neither section 629.24 nor its federal counterpart required that the recordings be sealed on a daily basis, the wiretap orders issued by the court stated that the recordings should be so sealed "and presented to [the] Court upon expiration of [the] Order, or any extension thereof." According to appellant, the recording thus had to be sealed every day. He also claims that the People failed to offer a legitimate reason for its two-day delay in submitting the recordings to the court for sealing. We conclude otherwise.

Because neither section 629.64 nor its federal counterpart require daily sealing, the absence of such sealing provided no basis for the court to grant appellant's motion to suppress under section 629.72. Moreover, the trial court did not err in finding that the People timely complied with the requirements of section 629.64. The wiretap orders expired on the afternoon of April 17, 2017. On April 19, at approximately 11:00 a.m., Deputy Bramlette informed the prosecutor that the recordings were

11

ready to be submitted to the judge for sealing. The judge was in trial, he scheduled the sealing for the following day at 4:30 p.m.

Because the recordings were "made available to the judge" within two days of the expiration of the wiretap orders, the trial judge did not err in finding that the recordings were timely submitted. (*United States v. Pedroni*, *supra*, 958 F.2d at p. 265.) To the extent it took an additional day for the judge to actually receive and seal the recordings, that delay was solely attributable to the judge due to his unavailability. (See *id.* at p. 266 ["The unavailability of the issuing or supervising judge may constitute a satisfactory explanation for a sealing delay"]; see also *United States v. Fury* (2d Cir. 1977) 554 F.2d 522, 533 [concluding that a six-day delay in sealing was reasonably explained by the fact that the issuing judge was on vacation].) Moreover, Deputy Bramlette's testimony made clear that the Ventura County Sheriff's Department "took special precautions to safeguard the recordings pending judicial sealing." (*United States v. McGuire*, *supra*, 307 F.3d at p. 1204.) Although appellant speculates that the delay in sealing may have created chain of custody issues, he makes "no claim that any of the recordings have been tampered with, the evil the sealing requirement is designed to combat." (*People v. Davis* (2008) 168 Cal.App.4th 617, 631.) Appellant's claim that the court erred in denying his motion to suppress on the ground that the recordings were not immediately made available to the court for sealing thus fails.

## II.

### *Unredacted Affidavits*

In his final claim, appellant asks us to independently review the redacted portions of the sealed affidavits accompanying wiretap order numbers 2017-04 and 2017-04c, as contemplated in *Hobbs*, *supra*, 7 Cal.4th 948. We agree with the

12

People that the hearing procedure set forth in *Hobbs* did not apply (nor did the court conduct such a hearing) because appellant did not file a noticed motion to traverse the affidavits or quash the wiretap orders on the ground that the supporting affidavits contained material misrepresentations, did not seek disclosure of the identity of a confidential informant, and did not move to unseal the unredacted affidavits. (See *id.* at p. 972.) Although he requested a *Franks* hearing in moving to suppress evidence obtained from the wiretap orders issued in 2016, all of the charges relating to those orders were dismissed by the prosecution pursuant to section 1385.

Appellant, however, did claim in his motion to suppress that the wiretaps of target phone numbers 2, 2a, and 6 were not supported by a showing of probable cause as set forth in the redacted affidavits upon which wiretap orders numbers 2017-04 and 2017-04c were based. It is also clear that in adjudicating this claim, the trial court conducted an in camera review of the unredacted affidavits. As the People note, the court also relied on the redacted portions of the affidavits in finding that the challenged wiretaps were supported by probable cause.

Accordingly, we need only decide whether the unredacted affidavits support the court's finding of probable cause. "The question facing a reviewing court asked to determine whether probable cause supported the issuance of the [wiretap orders] is whether the magistrate had a substantial basis for concluding a fair probability existed that a [wiretap] would uncover wrongdoing. [Citations.] 'The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that

13

contraband or evidence of a crime will be found in a particular place.' [Citation.]" (*People v. Kraft* (2000) 23 Cal.4th 978, 1040-1041.)

Based on our independent review of the unredacted affidavits, we conclude that the challenged wiretap orders were supported by probable cause.  Accordingly, the trial court did not err in denying appellant's motion to suppress on that ground.

### DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

PERREN, J.

We concur:

YEGAN, Acting P.J.

TANGEMAN, J.

Ben Coats, Judge
Michelle M. Castillo, Judge
Superior Court County of Ventura

_____

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Zee Rodriguez, Supervising Deputy Attorney General, and Charles J. Sarosy, Deputy Attorney General, for Plaintiff and Respondent.